UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRANDON SCOTT LAVERGNE**<br>  **LA. DOC #424229**<br>VS. | **CIVIL ACTION NO. 6:13-2118**<br><br>**SECTION P**<br><br>**JUDGE HAIK** |
| **"DATELINE" NBC** | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION

   *Pro se* plaintiff Brandon Scott Lavergne ("Lavergne"), proceeding in *forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on June 21, 2013.  Lavergne is an inmate in the custody of the Louisiana Department of Public Safety and Corrections.  He is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana where he is serving two life sentences imposed by the Louisiana Fifteenth Judicial District Court for Lafayette Parish following his August 17, 2012 convictions for the murder of Michaela Shunick ("Shunick") and Lisa Pate ("Pate").  Lavergne names "Dateline" NBC ("NBC") as the sole defendant.

   Lavergne alleges that, after his conviction for the Shunick and Pate murders, on January 29, 2013, NBC broadcast an episode on its news series "Dateline" entitled "Missing Micky" which focused on the investigation, prosecution and subsequent conviction of Lavergne for the Shunick murder.  Lavergne contends that the television show contained the following defamatory, false and misleading statements: (1) that Lavergne would leave his fiance's house and call escort services, when, according to

Lavergne, he did not call escorts on a regular basis and did not call these services after becoming engaged; (2) that a video showed Lavergne's truck following Shunick "very close" on St. Landry Street, when, according to Lavergne, the video does not show close pursuit; (3) that Lavergne's game was to seduce women and that he had girlfriends all over the place, which, according to Lavergne, is not true; (4) that Lavergne killed two women, implying he could kill more, when, according to Lavergne, he entered an *Alfred* plea to the Pate murder, the police had no proof that Pate's death was a homicide and Lavergne didn't kill Shunick in cold blood, but rather in self-defense; (5) that Shunick's murder was brutal (never mentioning Lavergne's eight stab wounds, two of which were life threatening), when, according to Lavergne, Shunick's death was not brutal since she only had two stab wounds and a single gun shot wound which killed her instantly; (6) that on the night of the murder, Lavergne's driving was impaired (never mentioning that, according to Lavergne, Shunick had also been drinking and using drugs, and that by riding her bicycle Shunick was guilty of DUI); and (7) that Lavergne had a "darkside", referencing only Lavergne's womanizing in support of the statement.

Lavergne criticizes NBC for failing to check the veracity of these statements from those interviewed on the segment prior to broadcast. As a result, Lavergne claims that he was slandered on national television in violation of his constitutional rights. Lavergne additionally faults NBC for the "theft" of his intellectual property, namely, showing photographs that came form Lavergne's computer and I-phone and his driver's license which displays Lavergne's status as a sex offender. By this action, Lavergne seeks actual

2

and punitive damages for libel and slander and alleged violations of his constitutional rights.

This matter has been referred to the undersigned for review, report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## LAW AND ANALYSIS

On August 17, 2012, Lavergne pled guilty to two counts of first degree murder for the murders of Shunick and Pate, with the stipulation that he be sentenced to life imprisonment on each count. In accordance with the plea agreement, Lavergne was sentenced that date to life imprisonment on each count. Lavergne did not directly appeal his convictions or sentences. Post-Conviction relief has not been granted.[1] Moreover, neither this nor any other federal court has issued a writ of *habeas corpus*.

**I. Screening**

When a prisoner files suit in *forma pauperis* pursuant to 42 U.S.C. § 1983, the court is obligated to evaluate the complaint and dismiss it without service of process, if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Gonzalez v.*

---

[1] This information was confirmed by communication with the Clerk of the Fifteenth Judicial District Court and the Louisiana Third Circuit Court of Appeal.

*Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) *citing Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). The plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Green v. Revel*, 2011 WL 165453, *1 (5th Cir. 2011) *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In his Complaint, Lavergne has set forth specific facts which he claims entitles him to damages and he has pleaded his best case. The facts alleged by Lavergne have been accepted as true for the purposes of this Report. Nevertheless, Lavergne's damage claims are subject to dismissal for the reasons which follow.

**II. Non-State Actor**

To prevail on a civil rights claim under § 1983, a plaintiff must prove that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States by a person acting under the color of law. 42 U.S.C. § 1983; *Robertson v. Plano City of Texas*, 70 F.3d 21, 23 (5th Cir. 1995) *citing Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Under the "color of law" requirement, the defendants in a § 1983 action must have committed the complained-of acts in the course of their performance of duties and have misused power that they possessed by virtue of state law and made possible only

4

because the wrongdoer is clothed with the authority of state law.  *United States v. Classic*, 313 U.S. 299, 325 (1941); *Screws v. United States*, 325 U.S. 91, 110 (1944) (plurality opinion).

It is clear that NBC is not a state actor as required for liability under § 1983.  To the contrary, NBC is private broadcasting corporation which is in no way clothed with the authority of state law.

Further, there is no factual basis to support any claim of a conspiracy between NBC and any alleged state actor to support a claim of state action.  *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) *citing McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990) ("'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy."); *Mills v. Criminal District #3*, 837 F.2d 677, 679-680 (5th Cir. 1988);  *See also Babb v. Dorman,* 33 F.3d 472, 476 (5th Cir. 1994) *citing Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (finding that bald, conclusory allegations that a conspiracy exists are insufficient to state a conspiracy claim); *Young v. Biggers*, 938  F.2d 565, 569 (5th Cir. 1991); *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) *citing McAfee, supra*.  Plaintiff's civil rights claims against NBC should therefore be dismissed for failure to state claims upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.  *Heck v. Humphrey*

To the extent that Lavergne also seeks monetary damages from NBC for

broadcasting alleged falsities, some of which form the factual basis for Lavergne's guilty plea for the murders of Shunick and Pate, for which Lavergne is serving two life sentences imposed by the Louisiana Fifteenth Judicial District Court for Lafayette Parish, these claims are barred by the principles set forth by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).[2]

It is well established that to recover damages for an allegedly "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a . . . plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of *habeas corpus* [under] 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable. *Heck*, 512 U.S. at 487, 114 S.Ct. at 2372. The Supreme Court imposed this requirement in order to avoid collateral attacks by plaintiffs

---

[2]Although *Heck* involved a § 1983 action, the Fifth Circuit has applied the rule to a tort action against presumed non-state actors explaining that "[t]he *Heck* rule was formulated in deference to the principle that 'civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.'" *Walter v. Horseshoe Entertainment*, 483 Fed. Appx. 884, 887 (5th Cir. 2012) *quoting Heck*, 512 U.S. at 486. Accordingly, the Fifth Circuit has applied *Heck* to bar Louisiana state law claims. *Thomas v. Louisiana Department of Social Services*, 406 Fed. Appx. 890, 897-898 (5th Cir. 2010). *See also DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 fn. 3 (5th Cir. 2007) (affirming dismissal of state law claims under *Heck* noting that "[t]he *Heck* court held that a civil tort action, including an action under section 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments."). *Heck* has also been applied in a diversity action to bar state law causes of action. *See Hardin v. Pfizer, Inc.,* 2007 WL 2212674, *7 (D. S.C. 2007).

on convictions against them that are "still outstanding." *Id.* at 486, 114 S.Ct. at 2371. Moreover, if judgment in favor of a plaintiff would "necessarily imply the invalidity of his conviction or sentence," then the complaint must be dismissed unless the plaintiff demonstrates that the conviction or sentence has already been invalidated. *Id. See also Edwards v. Balisok*, 520 U.S. 641, 643, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

    Lavergne alleges that the broadcast contained alleged falsities some of which form the factual basis for Lavergne's guilty plea for the murders of Shunick and Pate. These claims, would, if true, necessarily implicate the validity of Lavergne's state court criminal proceeding and the convictions and sentences imposed therein. Lavergne does not contend that his murder convictions or his life sentences have been reversed, expunged, or declared invalid. To the contrary, Lavergne admits that he is currently serving his sentences for these convictions. Moreover, there is no jurisprudence establishing that these convictions have been reversed, expunged, or declared invalid. Furthermore, no federal court has issued a writ of *habeas corpus*.

    While Lavergne suggests that his murder convictions and resulting sentences are invalid and unconstitutional based on the alleged falsities, Lavergne stands convicted, and his convictions rely upon the veracity of the facts supporting his guilty plea. Thus, it is clear that if this court were to grant Lavergne the damages he seeks, that ruling would necessarily implicate the validity of Lavergne's convictions and sentences. Accordingly, Lavergne's claims, which are directed at the veracity of facts broadcast by NBC, some of which form the factual basis for Lavergne's guilty plea for the murders of Shunick and

Pate and resulting convictions and sentences, are barred by *Heck*. The claims are not cognizable at this time. These claims must therefore be dismissed with prejudice for failure to state cognizable claims. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).[3]

## IV. State Law Claims

To the extent that Lavergne asserts defamation claims under Louisiana State law under this Court's diversity jurisdiction, those claims should be dismissed because they are not actionable as a matter of law.[4]

Louisiana substantive law applies in a diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Louisiana law, defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Kennedy v. Sheriff of East Baton Rouge,* 935 So.2d 669, 674 (La. 2006); *See also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 275, 91 S.Ct. 621 (1971) (observing that "damage to reputation is, of course, the essence of libel"). Four elements are necessary to establish a claim for defamation: (1) a false or defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence

---

[3]Moreover, even if Lavergne's claims were not barred by *Heck* because they would not necessarily imply the invalidity of his convictions and sentences, to recover damages Lavergne would still nevertheless have to prove that he suffered an actual, compensable injury. The United States Supreme Court in *Heck*, however, has held that actual, compensable injury "does not encompass the 'injury' of being convicted and imprisoned (until [the] conviction has been overturned)." *Heck*, 512 U.S. at 487 fn. 7. Thus, Lavergne's claim fails on the merits as well.

[4]The undersigned has assumed that NBC is a foreign corporation with its principle place of business located outside of Louisiana.

or greater) on the part of the publisher; and (4) resulting injury. *Id.* A statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Id.*

Under the "libel-proof plaintiff doctrine", if a plaintiff's reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most can be awarded because the person's reputation is not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law, and therefore, cannot maintain an action for defamation. *Lamb v. Rizzo,* 391 F.3d 1133, 1137-1139 (10th Cir. 2004).[5] The doctrine is based on the concept that the plaintiff's reputation is so tarnished that his reputation could not suffer further injury as a result of an otherwise libelous statement.[6] *Id.* In sum, the doctrine logically recognizes that without damage to

---

[5]The *Lamb* court noted that the judicially created doctrine, which recognizes that damage to one's reputation is the core of a defamation action, has been applied in a number of jurisdictions for more than two decades. *Lamb*, 391 F.3d at 1137 fn. 4 *citing Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303–304 (2nd Cir. 1986), *Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639–640 (2nd Cir. 1975), *Cerasani v. Sony Corp.*, 991 F.Supp. 343, 346, 352–355 (S.D. N.Y. 1998), *Wynberg v. Nat'l Enquirer, Inc.*, 564 F.Supp. 924, 927–928 (C.D. Cal. 1982), *Ray v. United States Dep't of Justice*, 508 F.Supp. 724, 726 (E.D. Mo.), *aff'd*, 658 F.2d 608 (8th Cir. 1981), *Logan v. Dist. of Columbia*, 447 F.Supp. 1328, 1332, 1336 (D.D.C. 1978), *Ray v. Time, Inc.*, 452 F.Supp. 618, 622 (W.D. Tenn. 1976), *aff'd*, 582 F.2d 1280 (6th Cir. 1978), *Cofield v. Advertiser Co.*, 486 So.2d 434, 435 (Ala. 1986), *Jackson v. Longcope*, 394 Mass. 577, 476 N.E.2d 617, 618–621 (1985), *Davis v. Tennessean*, 83 S.W.3d 125, 128–131 (Tenn. Ct. App. 2001), *Kevorkian v. Am. Med. Ass'n*, 237 Mich. App. 1, 602 N.W.2d 233, 239 (1999), *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 515–518 (Tex. Ct. App. 1987).

[6]The *Lamb* court explained:
> that when a plaintiff's reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law and is not permitted to burden a defendant

9

reputation, there is no actionable defamation. Accordingly, the doctrine has been most often been applied to plaintiffs with felony criminal convictions who are notorious for their past criminal acts, because the plaintiff's reputation is so poor that he is unlikely, as a matter of law, to recover more than nominal damages for an allegedly defamatory publication.[7] *Id.; Cardillo v. Doubleday & Co., Inc*., 518 F.2d 638, 639-640 (2nd Cir. 1975) *citing Urbano v. Sondern*, 41 F.R.D. 355, 357 (D.Conn.), *aff'd,* *640 370 F.2d 13 (2d Cir. 1966), *cert. denied*, 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596 (1967) and *Mattheis v. Hoyt*, 136 F.Supp. 119, 124 (W.D. Mich. 1955)*; Wynberg v. National Enquirer, Inc.*, 564 F. Supp. 924, 927-928 (C.D. Cal. 1982); *Ray v. U.S. Dept. of Justice*, 508 F. Supp. 724, 726 (E.D. Mo. 1981), *aff'd*, 658 F.2d 608 (8th Cir. 1981); *Ray v. Time, Inc.*, 452 F. Supp. 618, 622 (W.D. Tenn. 1976), *aff'd*, 582 F.2d 1280 (6th Cir. 1978);

---

> with a trial. Eliot J. Katz, Annotation, *Defamation: Who is "Libel–Proof,"* 50 A.L.R.4th 1257 (2004); accord 1 Robert D. Sack, Sack on Defamation § 2.4.18 (3d ed.2004); *See generally* Note, *The Libel–Proof Plaintiff Doctrine*, 98 Harv. L.Rev.1909 (1985).
>
> Stated another way:
>
> When ... an individual engages in conspicuously anti-social or even criminal behavior, which is widely reported to the public, his reputation diminishes proportionately. Depending upon the nature of the conduct, the number of offenses, and the degree and range of publicity received, there comes a time when the individual's reputation for specific conduct, or his general reputation for honesty and fair dealing is sufficiently low in the public's estimation that he can recover only nominal damages for subsequent defamatory statements.
> . . .
> *Wynberg*, 564 F.Supp. at 928.
> *Lamb*, 391 F.3d at 1137-1138.

[7]The doctrine is not limited, however, to those with criminal convictions. *See Guccione v. Hustler Magazine, Inc*., 800 F.2d 298, 303 (2nd Cir. 1986).

*Jackson v. Longcope*, 394 Mass. 577, 476 N.E.2d 617, 619-621 (1985); *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 517-518 (Tex. App. Tyler 1987), *writ dismissed*, (Mar. 30, 1988); *Logan v. District of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978); *Cerasani v. Sony Corp.*, 991 F.Supp. 343, 346, 352–355 (S.D. N.Y.1998); *Davis v. Tennessean*, 83 S.W.3d 125, 128–131 (Tenn. Ct. App. 2001); *Cofield v. Advertiser Co.*, 486 So.2d 434, 435 (Ala.1986) *citing Coker v. Sundquist,* 1998 WL 736655, at *3-4 (Tenn. Ct. App. Oct.23, 1998); *Carpenter v. King*, 792 F.Supp.2d 29, 34 fn.2 (D.D.C. 2011); *Griffin v. Griffin*, 2008 WL 5261954 (Pa. Com. Pl. May 23, 2008) (trial order).

To justify application of the "libel-proof plaintiff" doctrine, the record must demonstrate not only that the plaintiff has engaged in criminal or antisocial behavior in the past, but also that his activities were widely reported to the public, and that his reputation could not therefore have suffered any more from the publication of the false and libelous statement. *Thomas v. Telegraph Publishing, Co.*, 155 N.H. 314, 929 A.2d 993, 1005 (N.H. 2007) *citing McBride v. New Braunfels Herald-Zeitung*, 894 S.W.2d 6, 10 (Tex. App. Austin 1994), *writ denied*, (Mar. 30, 1995).

The Louisiana Supreme Court has not yet adopted the libel-proof plaintiff doctrine.[8]  However, when this Court, sitting in diversity, is presented with a point of

---

[8]The Fifth Circuit, sitting in diversity applying Louisiana law, has recognized the libel-proof plaintiff doctrine. However, the Court declined to apply the doctrine on motion for summary judgment because six years had passed since the plaintiffs were convicted and they had presented evidence that they had improved their standing in the community during this time period. Accordingly, the question of whether the plaintiff was libel-proof was left for the jury. *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d

state law which has not been decided by the Louisiana Supreme Court, the task of this Court, under *Erie,* "is to determine how the Louisiana Supreme Court would resolve the issue if presented to it." *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir. 1991) *quoting Coatings Mfrs., Inc. v. DPI, Inc.*, 926 F.2d 474, 479 (5th Cir. 1991). Thus, when the state's highest court has not definitively ruled upon an issue, federal courts must make an "*Erie* guess" as to what the state's highest court would most likely decide. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).

In the absence of any persuasive authority that the Louisiana Supreme Court would decide otherwise, the undersigned cannot disregard the above cited decisions.[9] Further, it appears beyond question that if the Louisiana Supreme Court were presented with Lavergne's Complaint, it would adopt the libel-proof plaintiff doctrine; moreover, given the heinous nature of Lavergne's crimes, for which he pled guilty only a little over one year ago, which crimes were highly reported to the public in both this community and nationwide, and the widespread local and national notoriety attached to Lavergne's murder convictions, the Louisiana Supreme Court would most certainly hold the doctrine applicable to Lavergne.

---

1066, 1074 (5th Cir. 1987).

[9]The undersigned notes that the United States Supreme Court has held that the incremental harm doctrine, the "cousin" of the libel-proof plaintiff doctrine is not compelled under the First Amendment, but left the States free to adopt the doctrine as a matter of state law. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 523, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

Under Louisiana law, damage to a person's reputation and good name is the core of a defamation action. *Kennedy, supra.* The complained of defamatory statements could not, as a matter of law, damage Lavergne's reputation so as to lower Lavergne in the estimation of the community, deter others from associating or dealing with Lavergne, or otherwise expose Lavergne to contempt or ridicule any more than he has already been lowered, outcast, held in contempt and ridiculed as a result of his double murder conviction. Lavergne's convictions for the murders of Pate and Shunick soil his reputation so severely that he is not susceptible of injury in matters relating not only to the murder convictions, but also his personal reputation.

While Lavergne complains that he is not a womanizer, who enjoys seducing women and utilizing escort services, Lavergne has been convicted of the first degree murder of two young women who he admittedly pursued and kidnaped, one of which (Pate) is alleged by Lavergne in other lawsuits filed by him in this Court to have been a prostitute, and the other (Shunick) having been kidnaped after Lavergne had admittedly been "driving around Lafayette . . . using his cell phone to make several calls to escort services."[10] Thus, by implication, Lavergne's criminal conduct is similar to the alleged defamatory conduct.

For these reasons, this case therefore presents one of those narrow instances where defamatory statements cannot realistically cause impairment of reputation. *Guccione*,

---

[10]*See* Statement in Support of Plea, signed by all parties, including Lavergne, and entered into evidence as S-2 at the August 17, 2012 guilty plea hearing, which is a matter of public record, which this Court takes judicial notice of.

800 F.2d at 303. Lavergne is libel-proof. Under the libel-proof plaintiff doctrine, Lavergne therefore cannot maintain a defamation action against NBC and his state law defamation claim should be dismissed as not actionable as a matter of law.[11]

## V. Diversity Jurisdiction is Lacking

Alternatively, this Court cannot exercise diversity jurisdiction over any defamation claim asserted by Lavergne under Louisiana State law because the requisite amount in controversy is lacking. For exercise of this Court's diversity jurisdiction, it is axiomatic that both complete diversity of citizenship and an amount in controversy which exceeds $75,000 must be present. 28 U.S.C. § 1332. From the face of Lavergne's Complaint, given Lavergne's libel-proof status thereby permitting an award, at most, of only nominal damages, and further given that an "actual, compensable injury". . . "does not encompass the 'injury' of being convicted and imprisoned (until [the] conviction has been overturned)"[12], it is clear that the requisite amount in controversy is not met in this case. Accordingly, Lavergne's complaint, which essentially alleges a defamation claim, is subject to dismissal for lack of jurisdiction.

For the reason set forth above;

**IT IS RECOMMENDED** that Lavergne's civil rights claims against "Dateline" NBC be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)

---

[11] In so holding, the Court is also sensitive to the overriding burden placed on the defendant and the citizens of this State that may be called for jury duty in the event this case proceeded toward trial.

[12] *See Heck*, 512 U.S. at 487 fn. 7.

for failure to state a claim upon which relief can be granted.

**IT IS FURTHER RECOMMENDED** that all of Lavergne's claims for money damages against "Dateline" NBC for broadcasting alleged falsities, some of which form the factual basis for Lavergne's guilty plea for the murders of Shunick and Pate, be **DISMISSED WITH PREJUDICE** subject to reassertion if the requirements of *Heck v. Humphrey* are met.

**IT IS FURTHER RECOMMENDED** that Lavergne's claims under Louisiana State law be **DISMISSED WITH PREJUDICE** because they are not actionable as a matter of law.

Alternatively, **IT IS FURTHER RECOMMENDED** that Lavergne's claims under Louisiana State law be **DISMISSED** for lack of jurisdiction.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except**

upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, February 12, 2014.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE